**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **JOHN E. FULLER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:13-cv-03924-JOF-AJB** |
| **SUNTRUST MORTGAGE, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES MAGISTRATE JUDGE'S
<u>FINAL REPORT AND RECOMMENDATION</u>**

Presently before the Court are a Motion to Dismiss Plaintiff's Complaint, filed by Defendant SunTrust Mortgage, Inc. ("Defendant" or "SunTrust"), [Doc. 5], and a Motion to Remand, filed by Plaintiff John E. Fuller, [Doc. 8]. For the reasons set forth herein, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff's motion to remand, [Doc. 8], and **HOLD IN ABEYANCE** the motion to dismiss, [Doc. 5], for disposition by the state court upon the case's **REMAND** to the Superior Court of Clayton County, Georgia.

I.      **Background**

    A.      **Facts**[1]

On December 29, 2003, Plaintiff purchased the property located at 22 Windgate Drive, Riverdale, Georgia 30274 ("the Property"). [Doc. 1-1 ¶¶ 6, 9, 10]. The Property was secured by a Deed to Secure Debt ("Security Deed"), executed in favor of SunTrust with Mortgage Electronic Systems ("MERS") as nominee. [*Id*. ¶ 7].

The Security Deed incorrectly stated that the Property is located at 22 Windgate *Court*, Riverdale, Georgia 30274. [*Id*. ¶ 8]. Nevertheless, through at least part of 2009, Plaintiff received all correspondence from SunTrust at the Property on 22 Windgate Drive.[2] [*Id*. ¶ 9].

In early 2010, Plaintiff faced a reduction in work hours, and he sent a letter to SunTrust to inquire about a possible loan modification. [*Id*. ¶ 12]. Beneath his signature on the letter, Plaintiff provided his address at 22 Windgate Drive. [*Id*. at 30 & ¶ 13]. Shortly thereafter, Plaintiff received a letter from SunTrust indicating that he

---

[1]      For the purposes of this Report and Recommendation ("R&R"), the undersigned presumes that the facts stated in the complaint are true.

[2]      The complaint does not make clear whether the correspondence was addressed to 22 Windgate Drive or whether it was addressed to 22 Windgate Court and was nevertheless delivered to 22 Windgate Drive. [*See* Doc. 1-1 ¶ 9].

AO 72A
(Rev.8/8
2)

might be eligible for a modification and requesting that he submit documentation.[3] [*Id*. ¶ 15]. Plaintiff then submitted a modification request to SunTrust. [*Id*. ¶ 16].

By letter dated June 30, 2010, and addressed to Plaintiff at 22 Windgate Drive, SunTrust confirmed a mortgage payment Plaintiff had made. [*Id*. at 32 & ¶ 17]. However, on July 9, 2010, when MERS assigned its interest in the loan to SunTrust, the Assignment, like the Security Deed, incorrectly described the Property's address as 22 Windgate Court. [*Id*. at 34 & ¶¶ 18-19].

Plaintiff did not receive an approval or denial of his February modification request. [*Id*. ¶ 20]. In August 2010, he contacted SunTrust about the status of his modification and was instructed to resubmit the application. [*Id*. ¶ 21]. He submitted a second modification application in September 2010. [*Id*. ¶ 22].

Later, when Plaintiff called to check on the status of his modification request, he learned that SunTrust had foreclosed on the Property on October 5, 2010. [*Id*. ¶¶ 23, 27]. Plaintiff was surprised by the sale. [*Id*. ¶ 28]. He had made numerous attempts to contact SunTrust while he was engaged in the loan modification process, he believed that his modification application was under review, and SunTrust had never sent a

---

[3]       The complaint does not indicate whether the letter was addressed to 22 Windgate Court or 22 Windgate Drive. [*See* Doc. 1-1 ¶ 15].

3

notice of foreclosure to 22 Windgate Drive, the Property's true address.  [*Id.* ¶¶ 25, 28, 31].  Plaintiff never received a denial of his renewed application, and SunTrust never explained why Plaintiff's modification request was not reviewed or approved. [*Id.* ¶¶ 29-30, 32].

### B.    Procedural History

Plaintiff filed suit against SunTrust in the Superior Court of Clayton County, Georgia, on or about October 15, 2013, raising claims for (1) wrongful foreclosure in violation of O.C.G.A. § 44-14-162.2(a); (2) wrongful foreclosure in violation of O.C.G.A. § 23-2-114; (3) negligent misrepresentation in violation of state common law; and (4) attorneys' fees pursuant to O.C.G.A. § 13-6-11.[4]  [Doc. 1-1 at 3, 7-10].  He contends in the complaint that SunTrust had a legal duty to inform him of the denial of his modification application and a legal duty to send a notice to the Property address at least thirty days before foreclosure, and he asserts that if he had been informed of the modification denial "he could have and would have exercised other options to save his home from foreclosure."  [*Id.* ¶¶ 26, 33-34].  He alleges that SunTrust's "breaches and omissions" caused him to lose use, title, and equity in his home, suffer damage to his

_____

[4]    The Clayton County Superior Court assigned the matter Case No. 2013CV04314-8.  [Doc. 1-1 at 3].

4

credit reputation, and incur relocation expenses and legal costs. [*Id.* ¶¶ 35, 42]. He seeks "reinstatement in the title," or alternatively, actual damages, as well as attorneys' fees, court costs, litigation expenses, and "any other relief that this Court considers proper." [*Id.* at 10].

On November 25, 2013, Defendant removed the matter to this Court on grounds of diversity-of-citizenship jurisdiction and federal-question jurisdiction. [Doc. 1]. Then, on December 9, 2013, it filed the motion to dismiss that is presently pending before the Court. [Doc. 5]. Plaintiff filed a response in opposition to the motion to dismiss on December 23, 2013, [Doc. 7], and on December 27, 2013, he filed the motion to remand that is also presently pending before the Court, [Doc. 8]. Thereafter, Defendant filed a reply brief in support of its motion to dismiss, [Doc. 10], and a response brief in opposition to the motion to remand, [Doc. 11].[5] The briefing period having elapsed, the Court now considers the motions.

---

[5]     Plaintiff did not file a reply brief in support of his motion to remand. (*See* Dkt.).

## II.    Removal and Remand

### A.    Legal Framework

The federal removal statute provides that, in general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed to federal court by the defendant or defendants to the case.  28 U.S.C. § 1441(a).  District courts have removal jurisdiction over a case if: (1) the case involves diversity of citizenship (and the defendant is not a citizen of the state in which the action is brought); or (2) a claim arises under the Constitution, or treaties, or laws of the United States (without regard to the citizenship or residence of the parties).  28 U.S.C. § 1441(b), (c).  A district court may also exercise supplemental jurisdiction over state-law claims that are so related to federal claims in the removed action "that they form part of the same case or controversy."  *See Wood v. City of Lanett*, 564 F. Supp. 2d 1317, 1318, 1322 (M.D. Ala. 2008) (quoting 28 U.S.C. § 1367(a) and citing *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002)); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (stating that § 1367(a) "applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one 'of which the district courts . . . have original jurisdiction' ") (quoting 28 U.S.C. § 1441(a)));

6

14B Charles Alan Wright et al., *Federal Practice & Procedure* § 3722.3 (4th ed. 2012) ("It has been well established for years that, in both cases commenced in federal court and those removed to federal court, federal courts can exercise jurisdiction over non-federal claims that are so closely related to a federal question as to fall within . . . the supplemental . . . jurisdiction of the federal courts."). The removing defendant has the burden of proving proper federal jurisdiction. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008).

Although the federal removal statute permits a defendant in a state civil action to remove the case to federal court under certain circumstances, federal law also allows the plaintiff to seek remand of the case to state court under 28 U.S.C. § 1447. Specifically, the remand statute provides that

> [a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).

28 U.S.C. § 1447(c).

Even in the absence of a motion to remand, "[t]he district court may remand a case *sua sponte* for lack of subject matter jurisdiction at any time." *Corporate Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1296 (11th Cir. 2009). " 'Subject matter jurisdiction . . . refers to a tribunal's power to hear a case.' " *Lobo v.*

*Celebrity Cruises, Inc.*, 704 F.3d 882, 891 (11ᵗʰ Cir. 2013) (quoting *Morrison v. Nat'l Australia Bank, Ltd.*, 130 S. Ct. 2869, 2877 (2010)).  "As the Federal Rules of Civil Procedure state, 'If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.' " *Williams v. Warden, Fed. Bureau of Prisons*, 713 F.3d 1332, 1337-38 (11ᵗʰ Cir. 2013) (quoting  Fed. R. Civ. P. 12(h)(3)); *accord Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); *id.* ("Subject-matter jurisdiction can never be waived or forfeited."); *see also Cadet v. Bulger*, 377 F.3d 1173, 1179 (11ᵗʰ Cir. 2004) ("Federal courts are obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking.") (quotation marks omitted).  Further, "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."  *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1050 (11ᵗʰ Cir. 2001).

### B.    Arguments

In his motion to remand, Plaintiff argues that diversity-of-citizenship jurisdiction does not apply because the amount in controversy does not exceed the statutory

8

minimum of $75,000; that there is no federal-question jurisdiction because his complaint does not raise federal claims; and that the Court therefore does not have subject-matter jurisdiction over the case.   [Doc. 8 at 2].   In response, Defendant contends that the value of Plaintiff's claims exceeds $75,000, thus meeting the amount in controversy necessary to invoke diversity jurisdiction, and that Plaintiff's claim for damage to his credit reputation inherently raises a federal claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, thereby establishing federal-question jurisdiction and providing grounds for supplemental jurisdiction. [Doc. 11 at 7-12].

### C.    Discussion

The Court first considers whether Defendant has established that the Court may exercise diversity-of-citizenship jurisdiction over the matter.  It will then assess whether Defendant has shown that the complaint's allegations support federal-question jurisdiction.

### 1.    Diversity-of-Citizenship Jurisdiction

Under 28 U.S.C. § 1332, district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.  28 U.S.C. § 1332(a).  Here, there is no question

9

that the parties are diverse: Plaintiff concedes that SunTrust is a foreign corporation.[6]

[Doc. 1-1 ¶ 2]. The parties also agree that where, as here, the plaintiff has not specified in the complaint the amount of damages sought, the defendant carries the burden to establish by a preponderance of the evidence that the value of the matter exceeded the jurisdictional amount at the time of removal. [*See* Doc. 8 at 4 (citing *Mosure v. BAC Home Loans Servicing, LP*, Civ. Action No. 1:12-cv-02798-CC (N.D. Ga. Aug. 5, 2013) (Cooper, J.), ECF No. 13 at 2; *Kurdi v. Bank of Am., N.A.*, Civ. Action No. 1:12-cv-2887-WSD (N.D. Ga. Nov. 19, 2012) (Duffey, J.), ECF No. 13 at 4; *Kelley v. Nationstar Mortg., LLC*, Civ. Action No. 1:12-cv-00288-AT (N.D. Ga. July 18, 2012) (Totenberg, J.), ECF No. 10 at 2; *Lowery v. Honeywell Int'l Inc.*, 460 F. Supp. 2d 1288, 1296 (N.D. Ala. 2006)); Doc. 11 at 5-6 (citing *Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1329 (11th Cir. 2010); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542-43 (7th Cir. 2006); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000))]; *see also Roe v. Michelin N. Am., Inc.*,

---

[6]      Defendant represents that it is incorporated under the laws of the state of Virginia and that its principal place of business is located in Richmond, Virginia. [Doc. 11 at 8 n.3].

10

613 F.3d 1058, 1061 (11th Cir. 2010).  At issue, however, is whether Defendant has in fact carried that burden.

Defendant recognizes that Plaintiff asserts claims for relocation expenses and damage to credit reputation, but it does not attempt to establish the value of these claims, instead arguing that the "bulk of the damages that Plaintiff is seeking will be for 'losing title' to the Property" and that the value of that claim, plus the claim for attorneys' fees, more likely than not exceeds $75,000.  [*See* Doc. 11 at 9-10].  It points out that the original loan amount reflected in the Security Deed was $128,000, [*id.* at 9]; asserts that "the principal balance alone was nearly $114,000.00" when the loan was referred to foreclosure attorneys in July 2010, [*id.* at 9 n.4]; points to cases in which courts found that the original amount of the security deed met the amount-in-controversy requirement, [*id.* at 9 n.5 (citing, *inter alia*, *Roper v. Saxon Mortg. Servs.*, Civ. Action No. 1:09-cv-312 (N.D. Ga. May 5, 2009) (Story, J.), ECF No. 11 at 6)]; and argues that it is "well established" that attorneys' fees also may be included in determining the amount in controversy, [Doc. 11 at 11 (citing *Blank v. Preventive Health Programs, Inc.*, 504 F. Supp. 416, 421 (S.D. Ga. 1980); *Vacca v. Meetze*, 499 F. Supp. 1089, 1091 (S.D. Ga. 1980))].  Defendant contends that it should therefore be clear that Plaintiff's demand for "reinstatement in the title," or

AO 72A
(Rev.8/8
2)

alternatively, actual damages, plus attorneys' fees and "any other relief that this Court considers proper" will "more likely than not" exceed the $75,000 jurisdictional threshold. [Doc. 11 at 8-11 [citing Doc. 1-1 at 10]].

After careful consideration of Defendant's argument, the undersigned finds that Defendant has not established by a preponderance of the evidence that the amount in controversy in this matter exceeded $75,000 at the time of removal. A court cannot find that the matter meets the amount-in-controversy requirement if the benefit the plaintiff may receive is "too speculative and immeasurable." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002). To determine the amount in controversy,

> the court considers the document received by the defendants from the plaintiff—be it the initial complaint or a later received paper—and determines whether that document and the notice of removal unambiguously establish federal jurisdiction. . . . In assessing whether removal was proper . . . , the district court has before it only the limited universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents. If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings. . . . The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars.

*Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213-15 (11th Cir. 2007).

12

Contrary to Defendant's inferences, none of the documents included with the notice of removal provide grounds upon which the Court might find that, more likely than not, the amount in controversy exceeded $75,000 at the time of removal. Nor has Defendant proffered such evidence in its response to Plaintiff's motion to remand.

### a.   *Actual Damages*[7]

As to the substantive claims alleged in the complaint, the fact that Plaintiff alleges lost equity and sues for reinstatement in the title does not establish that the $128,000 amount of the loan—or even the $114,000 Defendant asserts remains as outstanding principal on the loan—is at stake in this matter. This is true whether the matter is viewed primarily as an equitable action to set aside foreclosure or as an action for damages.

The Eleventh Circuit has stated that where a plaintiff seeks injunctive relief, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective," or "[i]n other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction

---

[7]   Because Defendant limits its discussion of actual damages to Plaintiff's claim for "losing title" to the Property and does not address the contribution of Plaintiff's claims for relocation expenses and damage to credit reputation to the amount in controversy, [*see* Doc. 11 at 8-10], the Court will do the same, *see Ward v. United States*, 154 F.R.D. 291, 293 (M.D. Fla. 1994) (refusing to supply argument for party).

13

were granted." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000). Specifically, where a plaintiff seeks to enjoin or set aside a foreclosure sale, " 'the amount in controversy [is] measured by the value of the object of the litigation,' that is, 'the property's undisputed fair market value.' " *Ballew v. Roundpoint Mortg. Servicing Corp.*, No. 12-11420, 2012 WL 4373004, at *1 (11th Cir. Sept. 26, 2012) (quoting *Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1047 (11th Cir. 1993)). In other words, " 'it is the value of the property rather than the claim of the contending parties which fixes the amount in controversy for purposes of jurisdiction.' " *Ballew*, 2012 WL 4373004 at *1 (quoting *Occidental Chem. Corp.*, 995 F.2d at 1047).

Here, Defendant has made no attempt to show that the value of the Property exceeded $75,000 at the time of removal. [*See* Doc. 11, *passim*]. Although the Security Deed executed in December 2003 does in fact indicate that at that time, an arm's-length transaction valued the Property at $128,000, that transaction took place almost *ten years* prior to the date of removal. [Doc. 1-1 at 14]. Indeed, examination of the notice of removal reveals that by October 5, 2010, the value of the Property had dropped precipitously since Plaintiff had purchased it: the Deed Under Power shows that Defendant was the highest bidder at the foreclosure auction and purchased the Property for $56,800. [*Id.* at 36-37]. Clayton County property tax records indicate that

14

the value of the Property then fell further:   the Property was sold again on June 22, 2012, for $29,000, and Clayton County subsequently assessed the Property's 2013 fair market value at $52,976.[8]   Clayton County Property Card for Year 2014, http://www.claytoncountyga.gov/departments/tax-assessor/real-property-records-search.aspx (search 22 WINDGATE DR) (last visited 5/12/14).   Thus, the Court finds the Security Deed and the principal balance on the loan to be of little use here in determining the value of the Property in late 2013.[9]

Defendant has also failed to show that the value of the substantive portion of the dispute exceeds $75,000 when viewed as an action for damages.   Plaintiff does not seek sole title or ownership of the Property free from encumbrances of the loan or to have

---

[8]      A court may take judicial notice of public records that are "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned" and therefore are "not subject to reasonable dispute." *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. Aug. 16, 2010); *see also* Fed. R. Evid. 201(b); *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. Apr. 18, 2006) ("Public records are among the permissible facts that a district court may consider.").   The Court does not rely upon these records as proof positive of the Property's value but rather as an indication that the amount stated in the Security Deed significantly exceeded the Property's fair market value during the time period relevant to the removal issues presently before the Court.

[9]      It also bears noting that Defendant has merely asserted that the principal balance on the loan in July 2010 was $114,000, and that it has proffered no evidence in support of the assertion.   [*See* Doc. 11 at 9 n.4].

AO 72A
(Rev.8/8
2)

the loan declared invalid, but rather seeks "reinstatement," thus suggesting that he seeks simply to stay in his still-encumbered home. [*See* Doc. 1-1 at 10]. "If a debtor elects to sue for damages, the recovery allowed is 'the full difference between the fair market value of the property at the time of the sale and indebtedness to the seller, if the fair market value exceeded the amount of the indebtedness.' " *Roylston v. Bank of Am., N.A.*, 290 Ga. App. 556, 660 S.E.2d 412, 417 (2008) (quoting *Dickens v. Calhoun First Nat'l Bank*, 208 Ga. App. 489, 491, 431 S.E.2d 121 (1993), *rev'd on other grounds*, 264 Ga. 285, 443 S.E.2d 837 (1994)). The Deed Under Power shows that the price paid for the Property at the foreclosure auction was $56,800. [Doc. 1-1 at 36-37]. Defendant represents that a few months before foreclosure, "the principal balance alone was nearly $114,000.00." [Doc. 11 at 9 n.4]. Thus, because it appears that the amount due on Plaintiff's loan exceeded the value of the Property by more than $50,000, it is unclear what, if any damages, Plaintiff is likely to recover.

### b. *Attorneys' Fees*

The undersigned finds that Defendant has also been far too presumptive in its argument that Plaintiff's demand for attorneys' fees pushes the amount in controversy over the jurisdictional limit. As an initial matter, where a brief relies on out-of-district trial-court cases, as is the case here for Defendant's assertion that "[i]t is well

16

established that attorneys' fees may be included in determining the amount in controversy," the principle cited therein can hardly said to be "well established." [*See* Doc. 11 at 11].  A district court is not bound by the decision of another district court.  *See Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*, 240 F.3d 956, 965 (11th Cir. 2001) ("[T]he district court cannot be said to be bound by a decision of one of its brother or sister judges.").

The Court nevertheless agrees with Defendant that a district court may consider a demand for attorneys' fees in determining the amount in controversy, at least to the extent that the attorneys' fees are allowable by applicable state law.  *See Jackson v. Am. Gen. Fin. Servs., Inc.*, Civ. Action No. 7:06-cv-19 (HL), 2006 WL 997614, at *2 (M.D. Ga. Apr. 17, 2006); *Hall v. Travelers Ins. Co.*, 691 F. Supp. 1406, 1409 (N.D. Ga. 1988) (Forrester, J).  However, the Court finds persuasive the numerous cases in this circuit in which district courts have held that the allegation of attorneys' fees "must be specific in order for a defendant to meet the burden of proof upon removal."  *Wisely v. Allstate Ins. Co.*, No. 8:05-cv-1659-T-24 MAP, 2006 WL 2189125, at *2 (M.D. Fla. Aug. 1, 2006); *Jackson*, 2006 WL 997614 at *2 (citing *Hall*, 691 F. Supp. at 1410; *Blank v. Preventive Health Programs, Inc.*, 504 F. Supp. 416, 421-22 (D.C. Ga. 1980)).  "A defendant, for example, can provide

AO 72A
(Rev.8/8
2)

the district court with affidavits containing the possible range of attorney's fees that are recoverable in the case." *Wisely*, 2006 WL 2189125 at *2 (quoting *Jackson*, 2006 WL 997614 at *2).

Plaintiff prays for attorneys' fees pursuant to O.C.G.A. § 13-6-11, which provides that a jury may allow attorneys' fees where it finds that "the defendant has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." It therefore appears that Georgia state law allows for attorneys' fees upon a jury's finding that the defendant has engaged in such conduct. However, because the award of fees is left to the discretion of the jury and because Defendant has offered no evidence, in the form of affidavits or otherwise, from which a specific amount of attorneys' fees may be ascertained, the Court has no way of determining whether an award of attorneys' fees, when added to the value of Plaintiff's other claims, would exceed the jurisdictional limit. *See Wisely*, 2006 WL 2189125 at *2; *Jackson*, 2006 WL 997614 at *3. Thus, Defendant has left the Court to speculate upon the amount of fees requested—a burden that the Court, of course, may not undertake. *See Lowery*, 483 F.3d at 1215 ("The absence of factual allegations pertinent to the existence of jurisdiction is dispositive.").

18

### c.     Conclusion

For all of these reasons, the undersigned concludes that although the amount in controversy in this matter may in fact exceed $75,000,  Defendant has failed to proffer evidence that would allow the Court to find that it is more likely than not to be the case.[10]  It is therefore **RECOMMENDED** to the District Court that it **DECLINE** to exercise subject-matter jurisdiction over this case on grounds of diversity-of-citizenship jurisdiction.

---

[10]     Defendant also points out in its response to Plaintiff's motion to remand that the complaint seeks unspecified "other relief"; asserts that the claim is "presumably based upon an allegation of bad faith"; and contends that because the complaint does not expressly disavow recovery of any punitive damages, "it is apparent" that Plaintiff is seeking punitive damages.  [Doc. 11 at 11].  However, it raises no argument that the Court consider such a demand in determining the amount in controversy.  [*Id*.].  Even had Defendant raised the argument, it would fail for the same reason its attorneys'-fees argument failed:  Defendant offers no specific amount or any evidence in the form of affidavits or similar cases to show the Court that punitive damages, when combined with the other requested damages would more likely than not exceed $75,000.  *See, e.g., Jackson*, 2006 WL 997614 at *3; *Hitch v. Laws*, No. Civ.A. 00-0226 PS, 2000 WL 1005888, at *2-3 (S.D. Ala. June 27, 2000); *Lowe's OK'd Used Cars, Inc. v. Acceptance Ins. Co.*, 995 F. Supp. 1388, 1392-93 (M.D. Ala. 1998).  Thus, the undersigned also recommends to the District Court that it not use any construed demand for punitive damages in determining whether the amount-in-controversy requirement is satisfied.

AO 72A
(Rev.8/8
2)

### 2.     *Federal-Question Jurisdiction*

The district courts have original jurisdiction founded on "a claim or right arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1441(c)(1)(A) (stating that such removal jurisdiction is of the same scope as original jurisdiction under 28 U.S.C. § 1331). Defendant asserts that the Court may exercise federal-question jurisdiction over this matter because Plaintiff's claim for damage to his credit is in fact a request for relief under the FCRA. [Doc. 1 at 1-2]. In his motion to remand, Plaintiff states that he does not raise a claim under the FCRA and points to his response to Defendant's motion to dismiss in which he states that he does not bring a credit defamation claim and does not contest Defendant's motion to dismiss so far as it seeks dismissal of a construed credit defamation claim. [Doc. 8 at 3 [citing Doc. 7 at 3 n.1]]. In response, Defendant contends that although the face of the complaint does not mention the FCRA or any other federal statute, the case nevertheless states a federal claim because Plaintiff's claim for damage to his credit reputation "necessarily relies upon the FCRA." [Doc. 11 at 7-8 [citing Doc. 1-1 ¶¶ 35, 42, 51, 59]].

A court determines whether a claim arises under federal law by examining the well-pleaded allegations of the complaint. *Dial v. Healthspring of Ala., Inc.*,

541 F.3d 1044, 1047 (11th Cir. 2008).  Thus, "a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law," meaning that the right created by federal law is an essential element of the plaintiff's cause of action.  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10-11 (1983).  The well-pleaded complaint rule therefore stands for the proposition that "the party who brings the suit is master to decide what law he will rely upon."  *Id.* at 22 (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)).  "The existence of federal jurisdiction is tested at the time of removal."  *Adventure Outdoors, Inc.*, 552 F.3d at 1294-95.  The removing defendant bears the burden of proving a federal question exists.  *Friedman v. N.Y. Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005); *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002).  "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly[, and] . . . all doubts about jurisdiction should be resolved in favor of remand to state court."  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

The undersigned finds that Defendant has failed to show that any of Plaintiff's claims arise under federal law.  Plaintiff's civil action arises from a foreclosure proceeding taking place under Georgia law.  Such a proceeding does not raise a federal

AO 72A
(Rev.8/8
2)

question by itself, and none of the four counts Plaintiff alleges in his complaint expressly asserts or purports to rely on a federal claim.   [*See* Doc. 1-1 at 7-10]. Moreover, nothing in the complaint indicates that Plaintiff is alleging that the damage to his credit resulted from any false statements Defendant made to credit reporting agencies; rather, his complaints of damage to his credit appear to arise from his allegations that Defendant failed to fairly exercise its power of sale contained in the Security Deed in violation of the foreclosure statutes and that it therefore should have had no basis for undertaking the foreclosure action that resulted in reporting financial information that was damaging to Plaintiff's credit but was nonetheless true. [*See id., passim*].  In other words, the claims for damage to credit reputation appear to be claims for consequential damages arising from the counts asserting wrongful foreclosure and negligent misrepresentation associated with Plaintiff's modification request.  The Court is unaware of any provision of the FCRA that gives rise to a claim for such conduct, and Defendant fails to provide any authority that might support such a determination.[11]  [*See* Doc. 11, *passim*].

_____

[11]     The Court recognizes that Defendant argued in its motion to dismiss that Plaintiff's claims for injury to his credit reputation are "preempted by the qualified immunity created by the [FCRA], specifically 15 U.S.C. § 1681h(e)." [Doc. 5-1 at 18 (citing *Johnson v. Citimortgage, Inc*., 351 F. Supp. 2d 1368, 1373 (N.D. Ga. 2004) (Evans, J.))].  "[A]n anticipated or actual federal defense generally does not qualify a

AO 72A
(Rev.8/8
2)

As such, Defendant has failed to show that Plaintiff's claims arise under federal law.  Consequently, the undersigned **RECOMMENDS** to the District Judge that he also **DECLINE** to exercise subject-matter jurisdiction over this case on grounds of federal-question jurisdiction.

### D.    *Stipulation to Amount in Controversy*

Defendant also requests that, in the event that the Court finds that it lacks subject-matter jurisdiction, the Court order Plaintiff to stipulate that he is seeking damages in an amount less than $75,000.   [Doc. 11 at 12 n.7].   Relying on 14AA Charles Alan Wright et al., *Federal Practice and Procedure* § 3702.1 & n.14 (4th ed.) and *Lewis v. Abbott Laboratories*, 189 F. Supp. 2d 590, 593 (S.D. Miss. 2001), he argues that the Court "certainly has the power to require that Plaintiff stipulate to the amount at issue here."  [Doc. 11 at 12 n.7].

While this may be true in some circumstances, the undersigned concludes that the Court has no basis upon which to issue such an order in this case.  As previously

---

case for removal." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 430-31 (1999); *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1013 (11th Cir. 2003) ("[U]nless the face of a plaintiff's complaint states a federal question, a Defendant may not remove a case to federal court on [a federal question] basis, even though a possible defense might involve a federal question.").  Thus, Defendant's "preemption" argument—even had it been asserted in response to Plaintiff's motion to remand—does not provide grounds for a determination that federal-question jurisdiction applies.

23

discussed, it is the *defendant's* burden—not the plaintiff's—to establish the amount in controversy upon removal. *See supra* Part II.C.1. (acknowledging the parties' agreement that where, as here, the complaint did not specify the amount in controversy, the defendant carries the burden to establish by a preponderance of the evidence that the value of the matter exceeds the jurisdictional amount); *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1320 (11th Cir. 2001) (plaintiff's refusal to stipulate that claim was for less than $75,000 did not prove by preponderance of evidence that demand exceeded the statutory minimum). Here, by filing a motion to remand, Plaintiff provided Defendant with a full and fair opportunity to present evidence establishing that the value of his claims more likely than not exceeded $75,000. *Cf. Williams*, 269 F.3d at 1321 (holding, in a case where subject-matter jurisdiction was suspect but there was no motion to remand, that the case was to be remanded to the district court to allow the defendant to attempt to prove by a preponderance of the evidence that the amount in controversy exceeded the jurisdictional amount). Defendant failed to meet its burden. *See supra* Part II.C.1. Thus, there is no basis upon which the Court might conclude that it has the jurisdiction to order Plaintiff to do anything, much less to stipulate to the value of his suit.

24

Even were the *Lewis* case Defendant cites binding on the Court, which, as a opinion of another district court, it is not, *Lewis* does not indicate a contrary result. Indeed, is does not appear that there was a request for a stipulation order at issue in the case. *See* 189 F. Supp. 2d at 591-94.  Additionally, both *Lewis* and the authority upon which *Lewis* relies support the Court's conclusion that if the defendant fails to show that it can meet its burden of proof regarding the amount in controversy, the Court has no grounds upon which to demand evidence or a stipulation from Plaintiff as to the value of his claims.  As Defendant represents, the *Lewis* court did note that in order to "bar" a defendant from removing a case to federal court, a plaintiff must show that he is "bound irrevocably" to a demand for less than the jurisdictional amount.  *Lewis*, 189 F. Supp. 2d at 592 (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 n.10 (5th Cir. 1995)).  However, the *Lewis* court went on to acknowledge that the plaintiff was not irrevocably bound by her demand, 189 F. Supp. 2d at 593 (noting that Mississippi law would allow the plaintiff to amend her demand at any time before the jury was presented with the case), yet nevertheless held that remand was warranted because the defendant had not met its burden to "present [the] court more than a hunch or suspicion that the amount in controversy exceed[ed] $75,000.00, exclusive of costs and interests," *id*.  Likewise, the *De Aguilar* case upon which *Lewis* relies expressly

25

states that the plaintiff's evidence regarding the amount in controversy comes into play only *after* the defendant meets its burden of showing that the amount in controversy exceeds the jurisdictional amount.  47 F.3d at 1411-12 ("[W]e hold that if a defendant can show that the amount in controversy actually exceeds the jurisdictional amount, the plaintiff must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint.").  Thus, the Court is not persuaded that *Lewis* provides any authority for ordering Plaintiff to stipulate to the value of his claims.

For these reasons, the undersigned **RECOMMENDS** to the District Judge that he **DENY** Defendant's request to order Plaintiff to stipulate to the value of his claims. [Doc. 11 at 12 n.7].

### III.   *Conclusion*

For the reasons discussed above, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff's motion to remand, [Doc. 8], **DENY** Defendant's request that the Court order Plaintiff to stipulate to the value of his claims, [Doc. 11 at 12 n.7], and **REMAND** the matter to the Superior Court of Clayton County, Georgia.  Accordingly, because this Court lacks subject-matter jurisdiction over the

26

case, the undersigned further **RECOMMENDS** that the motion to dismiss be **HELD IN ABEYANCE** for disposition by the state court.  [Doc. 5].

The Clerk is **DIRECTED** to terminate the reference to the undersigned.

**IT IS SO RECOMMENDED and DIRECTED**, this the 19th day of May, 2014.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

27